IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| KNOCKOUT HOLDINGS, LLC<br>f/k/a OCTO PLATFORM EQUITY<br>HOLDINGS, LLC, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-1625 |
| ARVINDER KAKAR, | ) ) | |
| Defendant-Appellee. | ) | |

**APPELLEE ARVINDER KAKAR'S REPLY MEMORDUM IN SUPPORT OF HIS MOTION TO INCLUDE SUPPLEMENTAL MATERAL AS AN ATTACHMENT TO THE APPELLEE'S BRIEF**

Appellee, Arvinder Kakar ("Kakar"), by counsel, states as follows in reply to

Plaintiff-Appellant's Knockout Holdings, LLC ("Knockout") Opposition to Kakar's

Motion to Include Supplemental Material As an Attachment to Appellee's Brief.

**ARGUMENT**

Knockout has made representations to federal and state taxing authorities that

are inconsistent with those made to this Court, the District Court and the Delaware

Chancery Court. On the one hand, in its filings with federal and state taxing

authorities, as reflected in Internal Revenue Service ("IRS") Schedule K-1s and state

K-1s, Knockout, which was formerly known as Octo Platform Equity Holdings,

LLC, has represented that Seva Holdings, Inc. ("Seva") was a member of Knockout

that was entitled to share of the company's profits and losses as of the end of 2022

1

#5406727v1

and throughout 2023. (Dkt. No. 32, Exs. A and B). On the other hand, Knockout asserts that it repurchased and cancelled all of Seva's Membership Units, thereby extinguishing any interest that Seva may have in Knockout, on April 15, 2022, such that Seva was not a member of Knockout when it filed this action in July 2023. (JA 752).[1] Both positions cannot be true.

The problem with Knockout's latter position is that it never paid Seva for its purported repurchase of its Membership Units by delivering to Seva a signed promissory note, as required by Section 8.7(d)(i) of the Operating Agreement, or by placing the full amount of the purchase price in escrow with a third-party escrow agent as required by Section 8.7(d)(iii) of the Operating Agreement. (JA 591-592). Knowing this to be case, Knockout was (or at least its accountants were) unwilling to falsely report to the federal and state taxing authorities that it had repurchased and cancelled Seva's Common Equity and Preferred B Membership Units. *See* 26 U.S.C. § 7206 (making it a crime to make or subscribe to any "return, statement, or other document" which the party asserts to be true under penalty of perjury, which is believed not to be entirely accurate).

---

[1] *See* JA 61 (on Summary Judgment, Seva asserting as an undisputed fact that Knockout, through its counsel, notified Kakar by letter dated April 15, 2022, that Knockout had "purportedly cancelled Seva' Membership Units and will 'from now on treat such units as having been repurchased by [Knockout]…," and JA 283 (Knockout not disputing the contents of the April 15, 2022 correspondence, but disputing that its "repurchase of Seva's membership units was 'wrongful'").

2

This is made clear in the 2022 IRS Schedule K-1 Knockout provided to Seva as required by the Operating Agreement. (JA 595). That K-1 reflects that Knockout reported to the federal and state taxing authorities that Seva was a member of Knockout and as such, was entitled to a share of the company's profits and losses as of December 31, 2022. (Dkt. No. 32, Exh. A). Knockout argues that the "2022 Schedule K-1 reflects the repurchase and cancellation of Seva's membership shares because it identifies withdrawals in an amount *identical* to their purchase price: $28,525,401." Opp. at 3, n. 1 (emphasis in original). Notably, Knockout does not assert that $28,525,401 was actually paid to Seva – in cash or by an executed promissory note – or that the full amount of the purchase price was placed in escrow per Section 8.7(d)(i) or (iii) of the Operating Agreement. *See* Op. Agr. (JA 591-592).

While the Operating Agreement provides that a Member's Capital account will be adjusted by, among other reasons, deducting any amounts paid to a Member to repurchase the Company Membership Units (JA 506), if that was the basis for the reduction in Seva's Capital Account reflected in the 2022 K-1, then Seva would no longer be a Member, it would not have a Capital Account, and it would not be entitled to distributions after the purported "repurchase" occurred in 2022. But that is not what Knockout reported to the taxing authorities.

The 2022 K-1 reflects that Seva remains a member and continues to be entitled to ███████████ hare of the distribution of Knockout's profits and losses as of

3

#5406727v1

December 31, 2022, well after the alleged cancellation of Seva's Membership Units in April 2022. (Dkt. No. 32, Ex. A). As noted in Appellee's Brief, pursuant to the Operating Agreement, only Members have capital accounts and only Members are entitled to receive distributions from Knockout. Appellee's Br. at 12-14. Accordingly, in order for Seva to be entitled to a ▮▮▮▮▮▮ share in the distributions of Knockout at the end of 2022, it must be a member as of December 31, 2022.

Had Knockout repurchased and cancelled all of Seva's Common Equity and Preferred B Membership Units in Knockout in April 2022, as it contends, then the 2022 K-1 would have shown a 0% as the "Ending" "Partner's share of profit, losses, and capital." (Dkt. 32, Ex. A). Plainly, if Knockout had actually repurchased and cancelled Seva's membership interest in Knockout in April 2022, Seva would have no interest – economic or otherwise – in Knockout as of December 31, 2022. Nevertheless, Knockout reported to the federal and state taxing authorities that Seva continued to hold a membership interest in Knockout at the end of 2022, and thus was entitled to percentage share of the distributions of profits and losses as of December 31, 2022.

Further evidencing this fact is the New York Corporate Partner's Schedule K-1 that Knockout provided Seva along with the 2022 IRS Schedule K-1. (Dkt. No. 32, at Ex. A). The New York K-1 reflects that Knockout reported to the New York

4

#5406727v1

taxing authorities that Seva remained a member of Knockout at the end of 2022. In the 2022 New York K-1, Knockout lists Seva as a ███████████████████ ████████ Dk. No. 32, Ex. A). Notably, column "F" asks "Did the partner sell its entire interest during the tax year?" and Knockout checked the box ████ (Dkt. No. 32, Ex. A). That statement cannot be true if the reduction in Seva's Capital Account was due to Knockout's purported repurchase and cancellation of all of Seva's Membership Units on April 15, 2022, as Knockout asserts.

Moreover, Knockout's position that Seva was not a Member of Knockout when it filed suit in July 2023 cannot stand in the face of the fact that it issued Seva an IRS Schedule K-1 for 2023. To avoid this obvious contradiction, Knockout asserts that "Seva receiving a 2023 K-1 just relates to its economic interest." (Opp. at 3, n. 1). Notably, Knockout makes no effort to explain how or why Seva would have any economic interest in Knockout if, as Knockout has asserted to this Court and the Delaware Chancery Court, it repurchased and cancelled all of Seva's Membership Units in April 2022. (JA 752). Knockout's position is wholly belied by the 2023 K-1, which shows that Seva's share of Knockout's profits and losses is ████████ at the beginning and at the end of the 2023 tax year. Pursuant to the Operating Agreement, only members share in Knockout's profits and losses. (JA 597).

Furthermore, along with the 2023 IRS Schedule K-1, Knockout provided Seva with the 2023 New York Corporate Partner's Schedule K-1, which reveals that

5

#5406727v1

Knockout reported to the New York taxing authorities that Seva was ████████ ███████████████████████ in 2023, and that Seva had not sold its entire interest in Knockout during the tax year. (Dkt. No. 32, Ex. B).

While Knockout argues that Delaware law recognizes that an economic interest in an LLC may be owned by persons who are not members, that basic principle of LLC law has no bearing on the facts at issue here, because there is no assertion that Seva assigned its membership interest or transferred its membership interests in Knockout to another party. Knockout's reliance on the Delaware Chancery Court's decision in *EBG Holdings LLC v. Vredezicht's Gravenahge 109 BV*, No. 3184-VCP, 2008 Del. Ch. LEXIS 127, at * 8, n. 27 (Del. Ch. Sept. 2, 2008), is of no help to Knockout. Op. Br. at 2. Notably, the Chancery Court in *EGB Holdings* looked to the LLC Agreement governing the parties in that case, which authorized the plaintiff company to treat record holders of the company's membership interests as "the owners for all purposes." *Id.* at * 9. Finding that the LLC agreement also delineated the process by which the company's members may transfer their interests to other parties, and finding the record inconclusive as to whether the defendant had properly transferred its interest in the company to another person, the Chancery Court concluded that the defendant continued to hold a membership interest in the company.

#5406727v1

Such is the case here. The Knockout Operating Agreement makes holders of membership interests in Knockout "owners" for all purposes. (JA 551). The Operating Agreement further restricts the transfer of a Membership Interest. (JA 579). As noted above, there is no contention that Seva transferred its membership interests to another.

Knockout also cites to this Court's decision in *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 225 (4th Cir. 2019), where this Court recognized that "as a default rule, economic interests in a limited liability company are fully alienable, although governance interests are not." (citations omitted). That basic proposition has no bearing on the jurisdiction issues raised here because under the Operating Agreement, Seva's ownership of Common Equity and Preferred B Membership Units gave it no governance rights. (JA 547, JA 555). Instead, Seva held an economic and ownership interest in Knockout pursuant to the Common Equity and Preferred B Membership Units. Those Membership Units represent the

███████████████████████████████████████████████████████ and

per the Operating Agreement, the holders of Membership Interests, as Members, have all rights of ownership, including rights to Membership Distributions. (JA 551-552) (emphasis added).

The 2022 and 2023 Schedule K-1s conclusively refute Knockout's position that Seva was not a member of Knockout when it filed this action in July 2023. As

demonstrated in Appellee's Brief, the Knockout Operating Agreement provides that

a ██████████████████ in Knockout means ████████████████████



██████████ (JA 551). Thus, only a "Member" is entitled to distributions from

Knockout, and only a "Member" is furnished with ███████████████████

████████████████████████████████████████

████████████████████████ (JA 595). The Operating

Agreement further provides that █████████████████████

███████████████████ and that ███████████████

████████████████████████████████████████

████████████ in accordance with this allocation. (JA 597, JA 598-

599).

The 2022 and 2023 Schedule K-1s issued to Seva establish Seva's

membership in Knockout throughout 2022 and 2023. Accordingly, this Court should

grant the Motion of Appellee Arvinder Kakar to Include Supplemental Materials as

an Attachment to the Appellee's Brief, and require Knockout establish why it should

not be estopped from denying that Seva was a Member of Knockout when it filed

the Complaint in this action.

#5406727v1

ARVINDER KAKAR


                    /s/ Charles M. Sims
                         *Of counsel*


Charles M. Sims (VSB No. 35845)
Joseph M. Rainsbury (VSB No. 45782)
O'HAGAN MEYER, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7111
Facsimile: (804) 237-0250
csims@ohaganmeyer.com
jrainsbury@ohaganmeyer.com

   *Counsel for Defendant-Appellee*

#5406727v1